# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| DANIEL KOCHANSKI, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) | Case No. 1:22-cv-00582 |
| vs. | ) ) ) | |
| AMERICAN CITY BUSINESS JOURNALS, INC., | ) ) ) | Hon. Hala Y. Jarbou **ORAL ARGUMENT REQUESTED** |
| Defendant. | ) ) | |

## DEFENDANT AMERICAN CITY BUSINESS JOURNALS, INC.'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant American City Business Journals, Inc. ("ACBJ") respectfully moves this Court to dismiss Plaintiff's Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because: (1) Plaintiff's Complaint fails to state a claim; (2) Plaintiff lacks Article III standing; and (3) Plaintiff's claims are time-barred.  Pursuant to Local Rule 7.1(d), Defendant's counsel certifies that on January 2, 2022, they communicated in writing to Plaintiff's counsel, explaining the nature of the relief sought in this Motion, and seeking concurrence in that relief.  Plaintiff's counsel stated that Plaintiff would oppose this Motion.

Dated: January 3, 2023                     Respectfully submitted,


                                           /s/ *Kristen C. Rodriguez*
                                           DENTONS US LLP
                                           Kristen C. Rodriguez
                                           Emily A. Golding
                                           233 S. Wacker Drive, Suite 5900
                                           Chicago, IL 60606-6404
                                           Tel: (312) 876-8000
                                           kristen.rodriguez@dentons.com
                                           emily.golding@dentons.com

CLARK HILL PLC
Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
151 South Old Woodward Avenue,
Suite 200
Birmingham, MI 48009
Tel: (248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant*,
*American City Business Journals, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| DANIEL KOCHANSKI, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| Plaintiff, | ) | Case No. 1:22-cv-00582 |
| | ) | |
| vs. | ) | Hon. Hala Y. Jarbou |
| | ) | |
| AMERICAN CITY BUSINESS JOURNALS, | ) | **ORAL ARGUMENT REQUESTED** |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF DEFENDANT AMERICAN CITY BUSINESS JOURNALS,
INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS .................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iii

STATEMENT OF ISSUES PRESENTED ...................................................................... vi

STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY ........................ vii

INTRODUCTION .............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 3

I.      The Michigan PPPA. ............................................................................................ 3

II.     PPPA Litigation and Legislative History.............................................................. 3

III.    Plaintiff Only Makes Conclusory Allegations of PPPA Violations. ................... 4

ARGUMENT ..................................................................................................................... 5

I.      Plaintiff's Complaint Fails To State A Claim Under The PPPA. ....................... 5

II.     Plaintiff Does Not Have Article III Standing. ................................................. 10

III.    Plaintiff's Claims Are Time-Barred................................................................... 17

        A.      Plaintiff Fails to Allege When His Claims Accrued............................... 17

        B.      The Three-Year Limitations Period Applies to Plaintiff's Claims. ...... 18

CONCLUSION................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arent v. Hatch*,
349 N.W.2d 536 (Mich. Ct. App. 1984) ............................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................... *passim*

*Baron v. Syniverse Corp.*,
No. 8:21-CV-2349-SCB-SPF, 2022 WL 6162696 (M.D. Fla. Oct. 7, 2022) .........................13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................6, 10

*Bishop v. Lucent Technologies, Inc.*,
520 F.3d 516 (6th Cir. 2008) ...................................................................................6, 7, 10

*Blaise v. Transworld Systems Inc.*,
No. 21-CV-05791, 2022 WL 3927746 (N.D. Ill. Aug. 30, 2022) .........................................13

*Boelter v. Advance Magazine Publishers Inc.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016) ...............................................................................18

*Callahan v. American City Business Journals, Inc.*,
No. 21-cv-12832-RHC-CI (E.D. Mich.) ..............................................................................4

*Citizens for Pretrial Justice v. Goldfarb*,
327 N.W.2d 910 (Mich. 1982) .........................................................................................19

*Coulter-Owens v. Time Inc*,
695 F. App'x 117 (6th Cir. 2017) ..........................................................................4, 12, 14, 15

*Dabish v. McMahon*,
818 F. App'x 423 (6th Cir. 2020) .....................................................................................19

*Derderian v. Genesys Health Care System*,
689 N.W.2d 145 (Mich. Ct. App. 2004) .............................................................................18

*Ewing v. MED-1 Sols., LLC*,
24 F.4th 1146 (7th Cir. 2022) .........................................................................................12

*Faherty v. Rubin & Rothman, LLC*,
No. 3:21-CV-650(AWT), 2022 WL 1025958 (D. Conn. Apr. 6, 2022) ..................................13

iii

*Fisher v. Perron*,
    30 F.4th 289 (6th Cir. 2022) ...........................................................................10

*Frame v. Nehls*,
    550 N.W.2d 739 (Mich. 1996) .........................................................................20

*Green v. Lansing Automakers Federal Credit Union*,
    No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019) ......................18

*Hall v. Farm Journal, Inc.*,
    No. 2:21-cv-11811, ECF 26 (E.D. Mich. April 5, 2022) .....................................19

*Hunstein v. Preferred Collection & Management Services, Inc.*,
    48 F.4th 1236 (11th Cir. 2022) ................................................................ *passim*

*Krassick v. Archaelogical Institute of America*,
    No. 21-cv-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022) ................... *passim*

*League of United Latin American Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) ...........................................................................5, 6

*Long v. Insight Communications of Central Ohio, LLC*,
    804 F.3d 791 (6th Cir. 2015) ...........................................................................10

*Maddox v. Bank of New York Mellon Trust Co., N.A.*,
    19 F.4th 58 (2d Cir. 2021) ...............................................................................14

*Marks v. Hulstrom*,
    No. 294453, 2010 WL 2134303 (Mich. Ct. App. May 27, 2010) ........................19

*McCree v. Continental Management, LLC*,
    No. 351171, 2021 WL 1050115 (Mich. Ct. App. Mar. 18, 2021) ........................19

*Michigan Employment Security Commission v. Westphal*,
    542 N.W.2d 360 (Mich. Ct. App. 1995) ........................................................19, 20

*Moeller v. American Media, Inc.*,
    235 F. Supp. 3d 868 (E.D. Mich. 2017).............................................................18

*Nashel v. The New York Times Company*,
    No. 2:22-cv-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022)............... *passim*

*Ott v. Midland-Ross Corp.*,
    523 F.2d 1367 (6th Cir. 1975) .........................................................................17

*Perlin v. Time Inc.*,
    237 F. Supp. 3d 623 (E.D. Mich. 2017)..............................................................18

*Pratt v. KSE Sportsman Media, Inc.*,
    586 F. Supp. 3d 666 (E.D. Mich. 2022) ................................................................5, 19

*Rhule v. Armstrong*,
    187 N.W.2d 223 (Mich. 1971) ................................................................................19

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ....................................................................................10, 11, 12

*TransUnion LLC v. Ramirez*,
    141 S.Ct. 2190 (2021) ........................................................................... *passim*

*Ward v. National Patient Account Services Solutions, Inc.*,
    9 F.4th 357 (6th Cir. 2021) ....................................................................................13

*Wheaton v. Apple Inc.*,
    No. 3:19-cv-02883, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019) .........................9

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1332(d) ...........................................................5

M.C.L. § 445.1711, *et seq.* ............................................................................ *passim*

M.C.L. § 600.5813 ................................................................................................18, 19

MCL § 600.5805(2) ........................................................................................17, 18, 19

**Other Authorities**

Fed. R. Civ. P. 8 .............................................................................................6, 17, 18

Fed. R. Civ. P. 12(b)(1) ............................................................................................17

Fed. R. Civ. P. 12(b)(6) ......................................................................................10, 17

## STATEMENT OF ISSUES PRESENTED

1. Whether Plaintiff fails to plausibly allege that Defendant violated the Michigan Preservation of Personal Privacy Act ("PPPA") by unlawfully disclosing his information to a third party prior to July 31, 2016.

Defendant's Answer: YES.

2. Whether Plaintiff has Article III standing to assert his claims under the PPPA.

Defendant's Answer: NO.

3. Whether Plaintiff's PPPA claims are barred by the three-year statute of limitations in M.C.L. § 600.5805(2), which is the limitations period traditionally applied to privacy torts.

Defendant's Answer: YES.

**STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY**

The controlling authority for this Motion includes:

1. Federal Rule of Civil Procedure 12(b)(6).

2. Federal Rule of Civil Procedure 12(b)(1).

3. MCL § 600.5805(2).

4. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

5. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

6. *Nashel v. The New York Times*, No. 2:22-cv-106332022 WL 6775657 (E.D. Mich. Oct. 11, 2022).

7. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021).

8. *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).

9. *Hunstein v. Preferred Collection & Management Services, Inc.*, 48 F.4th 1236 (11th Cir. 2022) (*en banc*).

10. *Green v. Lansing Automakers Federal Credit Union*, No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019).

11. *Michigan Employment Security Commission v. Westphal*, 542 N.W.2d 360 (Mich. Ct. App. 1995).

## INTRODUCTION

Plaintiff Daniel Kochanski ("Plaintiff" or "Kochanski") contends that Defendant American City Business Journals, Inc. ("ACBJ") wrongfully disclosed his "Private Reading Information" ("PRI") during a period of just over a month in 2016, in purported violation of Michigan's Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq.* (the "PPPA").  Subject to certain exceptions, the PPPA prohibits disclosures of "information concerning the purchase" of written materials by a customer "that indicates the identity of the customer."  M.C.L. § 445.1712 (1989). Kochanski brings his claims under the pre-July 31, 2016 version of the PPPA that permitted individuals to seek either actual damages **or** a $5,000 statutory penalty (the PPPA was subsequently amended to require proof of actual damages; statutory damages are no longer available).

Thus, Kochanski seeks to cash in for himself, a purported class, and his lawyers, on a statutory penalty provision long-since repealed.  Indeed, this is but one of 90 PPPA class action lawsuits filed since 2021 by the same plaintiffs' counsel seeking statutory damages for purported violations of the pre-July 31, 2016 version of the PPPA.  But Kochanski's effort to capitalize on these dated claims is unavailing, and his Complaint should be dismissed for at least three reasons:

*First*, the Complaint, which repeats almost verbatim a prior complaint filed by plaintiffs' counsel against ACBJ as well as other PPPA complaints, includes only vague and conclusory allegations, pled for the most part on information and belief, that fail to state a claim for a violation of the PPPA.  The Complaint contains no specific allegations of the actual disclosure of any customer's information, let alone of Kochanski's information.  At best, Kochanski's allegations create a mere suspicion that his PRI may have been disclosed to third parties by ACBJ in the few weeks prior to July 31, 2016—the relevant timeframe for this case—but that is insufficient to state a claim under well-established pleading standards.  Significantly, in a substantially similar case in

1

the Eastern District of Michigan, Judge Murphy recently dismissed a PPPA action with prejudice for failing to adequately plead disclosure, where the allegations were more detailed than those pled here. *Nashel v. The New York Times*, No. 22-cv-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022).

*Second*, Kochanski does not have Article III standing to assert his claim in federal court. Kochanski will likely rely on this Court's previous decision in *Krassick v. Archaeological Institute of America*, No. 21-cv-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022), but, respectfully, *Krassick* is readily distinguishable because here (unlike in *Krassick*), Kochanski has failed to plausibly allege that his personal information was disclosed. In addition, the cases on which *Krassick* relied are no longer good law under the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021). As the Supreme Court explained in *TransUnion*, in cases involving alleged *intangible* harms like those alleged by Kochanski here, courts should evaluate whether the purported intangible harm matches up with a harm "traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 2204. Under *TransUnion*—which the courts rendering the decisions cited in *Krassick* did not have an opportunity to address—an alleged violation of the PPPA lacks the required "close relationship to" traditionally recognized harms. *Id.* As discussed below, a required element of common law torts involving disclosures of private information is that the defendant give publicity to the information at issue. Here, Kochanski does not—and could not—allege that essential element.

*Third*, Kochanski's claims are time-barred. Any claim under the pre-July 31, 2016 version of the PPPA expired on July 30, 2019, three years after the amendment. ACBJ acknowledges that this Court previously reached a different conclusion in *Krassick*, but respectfully requests that this Court reconsider that decision because Michigan courts apply the more specific three-year

personal injury limitations period to statutory claims like Kochanski's even when those statutes themselves do not specify an applicable limitations period.

ACBJ respectfully requests that this Court dismiss the Complaint with prejudice.

## STATEMENT OF FACTS

### I.  The Michigan PPPA.

The PPPA was passed in the wake of a federal statute, the "Video Privacy Protection Act," which was enacted following the disclosure of Supreme Court nominee Judge Robert Bork's video rental choices in a newspaper. *See* ECF 1, Compl. Ex. B at PageID.31.  Michigan's law went further than the federal Act, however.  In addition to video rental records, its scope includes "books or other written materials," proscribing certain "disclosures" of records or information "concerning the purchase, lease, rental, or borrowing of those materials," M.C.L. § 445.1712 (1989).

### II.  PPPA Litigation and Legislative History.

The Michigan statute sat on the books largely forgotten for nearly 30 years until class action plaintiffs' counsel started bringing a series of lawsuits against magazine publishers over "direct marketing" mailing practices.  The allure of class actions under the PPPA was a statutory damages provision that permitted an action for actual damages *or* $5,000 in statutory damages, whichever was greater.  M.C.L. § 445.1715 (1989).  Not surprisingly, the prior PPPA class action suits (filed against publishers by the same plaintiffs' lawyers here, in or around 2013-2015) all sought statutory damages of $5,000 per subscriber, threatening *in terrorem* class action damages.

In the wake of these potentially crippling class action lawsuits, and in recognition of the lack of actual harm suffered by the class action plaintiffs, the Michigan Legislature amended the PPPA in 2016 (the "2016 Amendment").[1]  Among other things, the 2016 Amendment expressly

---

[1] S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (codified at M.C.L. § 445.1711, *et seq.* (2016)).

removed the provision for $5,000 statutory damages, and in its place, provided only for actual damages.  *See* MCL § 445.1715(2).  The 2016 Amendment took effect July 31, 2016.  Thus, July 30, 2016, was the last day the $5,000 statutory damages provision was in place.[2]

### III.   Plaintiff Only Makes Conclusory Allegations of PPPA Violations.

In December 2021, a different plaintiff, Daniel Callahan, represented by the same counsel, sued ACBJ in the Eastern District of Michigan alleging nearly identical claims to those in Kochanski's Complaint.  *See Callahan v. American City Business Journals, Inc.*, No. 21-cv-12832-RHC-CI (E.D. Mich.), ECF 1, Complaint (filed Dec. 3, 2021).  ACBJ moved to dismiss that complaint and the plaintiff voluntarily dismissed the action (without responding to the motion).   Kochanski filed this case approximately one month later on June 23, 2022.[3]  In the Complaint, Kochanski—an alleged subscriber to *Hemmings Motor News*—vaguely alleges that ACBJ "rented, exchanged, and/or otherwise disclosed detailed information" about his "Private Reading Information" ("PRI")—*i.e.*, his name, home address, and the "titles of publications subscribed to"—to third parties without consent or notice, and that such disclosures violated the PPPA.  ECF 1, Compl. at ¶¶ 1, 5.

Kochanski alleges that a "list broker" called Nextmark, Inc. "offers to provide renters access to the mailing list titled 'Hemmings Publishing Masterfile Mailing List,'" in an advertisement—called a "data card"—published online on a third party's website in *June 2022*. *Id.* at ¶ 2.  Plaintiff alleges that this mailing list purportedly contains the PRI of ACBJ's "active

---

[2] The 2016 Amendment applies only prospectively.  *Coulter-Owens v. Time Inc*., 695 F. App'x 117, 121 (6th Cir. 2017).

[3] All of the 90 PPPA class actions filed in the latest wave of lawsuits were filed by the same lead plaintiffs' lawyers as here, who also filed two earlier rounds of PPPA lawsuits against publishers. The latest wave of lawsuits began in 2021, as the purported six-year limitations period for pre-2016 Amendment claims was about to run out.

U.S. subscribers."  *Id.*  Noticeably missing from the Complaint are any allegations, let alone plausible ones, that *ACBJ* itself disclosed Kochanski's (or anyone else's) name and address to anyone, including to NextMark, during the relevant pre-July 31, 2016 timeframe or at any time at all.[4]

Kochanski seeks to represent a class of all Michigan residents who allegedly had their PRI disclosed to third parties by ACBJ without their consent during the relevant time period prior to July 31, 2016.  *Id.* at ¶ 49.  His allegations and those of the putative class are brought under the pre-July 31, 2016 version of the PPPA to take advantage of the $5,000 statutory penalty available under that version of the statute, avoid the obligation to prove actual damages for each class member, and meet the aggregate amount necessary for federal jurisdiction—because this same class action is *prohibited* in Michigan state court.  *Id.* at ¶ 1, n. 2.[5]

## ARGUMENT

### I.  Plaintiff's Complaint Fails To State A Claim Under The PPPA.

To survive a motion to dismiss, Kochanski must allege facially plausible *facts* supporting his claims that ACBJ is liable under the PPPA.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's "factual allegations, assumed to be true, must do more than create speculation or

---

[4] Kochanski does not specify what he views as "the relevant pre-July 31, 2016 timeframe," but assuming, without conceding that a six year limitation applies, that time period should be June 23, 2016—six years from the filing of this Complaint—through July 30, 2016—the last day that the prior version of the PPPA was in effect.  *See Pratt v. KSE Sportsman Media, Inc*., 586 F. Supp. 3d 666, 675 and n.6 (E.D. Mich. 2022) (finding a six-year limitation period applied and that any claims accruing more than six years prior to the date of the filing of the complaint are barred).  The specific pre-July 31, 2016 time period is not dispositive or relevant to this Motion, as Kochanski has not alleged disclosures *at any point* prior to that date.

[5] Michigan Court Rule 3.501(A)(5) does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes a class, which the PPPA does not.  To circumvent this prohibition, Kochanski seeks to invoke federal jurisdiction through the Class Action Fairness Act, 28 U.S.C. § 1332(d).  *See* ECF 1, Compl. at ¶ 11.

suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original). Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he Court will not presume the truth of legal conclusions in the complaint." *Nashel*, 2022 WL 6775657, at *2. Importantly, "a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (emphasis in original).

Here, the Complaint is devoid of any actual facts supporting Kochanski's allegations that ACBJ unlawfully disclosed his PRI in violation of the PPPA.  To plead a claim under the PPPA, a plaintiff must allege facts that, if proved, would show both that (i) the defendant disclosed the relevant information about the plaintiff without the plaintiff's consent, and (ii) the information specifically identified the plaintiff to the party receiving that information.  M.C.L. § 445.1712 (1989) (prohibiting disclosure "to any person, other than the customer, a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer").  Under Kochanski's own formulation of these statutory requisites, he must plead plausible facts demonstrating that, *during the relevant time period*, ACBJ unlawfully disclosed his PRI—his full name, the *specific title* of the publication subscribed to, and his home address—to third parties.  *See* ECF 1, Compl. at ¶ 9.  As noted above, the relevant time period took place between June 23, 2016 and July 30, 2016—a mere 37 days.

Kochanski doesn't come close to pleading that a disclosure took place during that narrow window.  Instead, his PPPA claims are conclusory cut-and-paste allegations, pled largely on

information and belief, that ACBJ disclosed subscriber names and addresses to unnamed "data aggregators, data appenders, data cooperatives, and list brokers . . . during the relevant pre-July 31, 2016 time period."  *Id.* at ¶ 1.  He does not substantiate this barebones statement, thus failing to provide sufficient facts from which this Court could draw a plausible inference that ACBJ violated his rights under the PPPA in the relevant pre-July 31, 2016 time period.  *See Iqbal*, 556 U.S. at 678; *Nashel*, 2022 WL 6775657, at *4-6.

In *Nashel*, a PPPA action filed by Kochanski's counsel here, Judge Murphy granted the defendant's motion to dismiss for failure to plead a plausible claim under the PPPA.  Just as Kochanski attempts to do here with his citation to a 2022 data card published by a third party, the *Nashel* plaintiffs supported the allegations in their complaint with third-party data cards from a different time period.  *Nashel*, 2022 WL 6775657 at *1 (submitting data cards from nearly a decade before the relevant 2016 time period).  The *Nashel* plaintiffs went even further, however, and made allegations about the defendant's privacy policy and cited a case study concerning Virginia Beach's alleged rental of a list of defendant's subscribers' email addresses.  *Id.* at *2.

The *Nashel* court found that "Plaintiffs' allegations, even in light of that evidence, fail to clear the plausibility threshold."  *Id.* at *4.  Judge Murphy concluded that, at best, the plaintiffs' supporting allegations—the third-party data cards, the defendant's privacy policy, and the Virginia Beach case study—"create[d] only suspicion as to whether Defendant violated the PPPA during the pre-July 31, 2016 period."  *Id.*  "[A] complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient."  *Id.* (quoting *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008)).  The plaintiffs did not appeal the *Nashel* decision.

Kochanski's allegations here are weaker than in *Nashel*. The lone piece of so-called "documented evidence" he relies upon is a third-party data card published by NextMark, similar to the one attached to the *Nashel* complaint. ECF 1, Compl. at ¶ 2; Ex. A. Neither the timing nor the content of this data card supports his allegations that ACBJ violated the PPPA in the pre-July 31, 2016 time period. To start, Kochanski's own allegation regarding the subscriber data that NextMark purportedly offers for sale makes it clear that the information is that of *current* subscribers in 2022. ECF 1, Compl. at ¶ 2. It says nothing about data or information of subscribers in June to July of 2016, or any time before then. Just as in *Nashel*, a data card from an irrelevant time period does not create any requisite plausible inference. *See Iqbal*, 556 U.S. at 678; *Nashel*, 2022 WL 6775657, at *4-6. Kochanski's allegations here necessarily rely "on a legal-conclusion inference" that ACBJ systematically and continuously violated the PPPA from 2022 backwards to 2016. *Nashel*, 2022 WL 6775657, at *5. But this Court cannot "presume the truth of legal conclusions," and because "[Kochanski] cannot otherwise account for the . . . time gap, the data cards make the complaint's allegations merely *possible* rather than plausible." *Id*. (internal citation omitted) (emphasis in original).

Furthermore, the content of this data card or any "similar" data card does not plausibly establish that ACBJ violated the PPPA. The data card provides no suggestion as to what information was allegedly disclosed through the mailing list. *See* ECF 1, Compl. at ¶ 2; Ex. A. All the data card indicates is that a list titled "Hemmings Publishing Masterfile Mailing List" purports to contain information about those "who subscribe to Hemmings publications," without specifying whether it contains information about *which* Hemmings publication an individual subscribed to—a necessary prerequisite of PRI under Kochanski's own definition. *Id.* at ¶ 5.

Nor does the data card explain the *source* of any information available in the mailing list, meaning that there is *no connection* between the data card and any alleged conduct by ACBJ.  Just as the *Nashel* court found, "nothing on the data cards explains how [NextMark] received [ACBJ's] subscription list" and it therefore "fail[s] to support a crucial element of [Kochanski's] alleged action: that [*ACBJ*] engaged in the business of selling written material to disclose information personally identifying the customer."  *Nashel*, 2022 WL 6775657, at *5 (internal citation omitted). This is a "gaping omission" that requires a "large inferential leap" to connect ACBJ's alleged conduct to the data cards, and Kochanski fails to "create a reasonable inference of [ACBJ's] culpability." *Id.*

The same result was reached in *Wheaton v. Apple Inc*., No. 3:19-cv-02883, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019), attached hereto as **Exhibit 1**, another action alleging claims under the Michigan PPPA brought by the same lawyers as here.  Just as in Kochanski's Complaint, the *Wheaton* plaintiffs claimed that Apple "rents, transmits, or otherwise discloses" its customers' private information "to data aggregators, data miners, data brokers, data appenders, and other third parties . .  . ." *Compare Wheaton v. Apple Inc.*, No. 3:19-cv-02883 (N.D. Cal.), Compl. ECF 1, attached hereto as **Exhibit 2**, ¶¶ 3, 6, 47 *with* ECF 1, Compl. at ¶ 1. The *Wheaton* court held plaintiffs' PPPA "complaint fail[ed] to plausibly allege with enough facts that Apple disclosed plaintiffs' personal listening information to third-party data brokers and similar entities," and the complaint's exhibits, including similar data cards as to the one Plaintiff relies on here, "d[id] not show that Apple disclosed customers' personal listening information."  2019 WL 5536214, at *5.

Finally, Kochanski alleges he saw a "barrage of unwanted" junk mail during the undefined relevant timeframe.  *See* ECF 1, Compl. at ¶ 1.  But he does not specify any causal connection between his subscription to an ACBJ publication and junk mail.  *See id.*  There could be numerous

reasons for such junk mail, all unrelated to ACBJ, including those pled in his own Complaint.[6] This implausible allegation is incapable of supporting Kochanski's claims. *See Iqbal*, 556 U.S. at 678; *see also Nashel*, 2022 WL 6775657 at *1 (plaintiffs made same "uptick in junk mail" arguments, which the court did not buy).

Without factual allegations "facially support[ing] the conclusion" that ACBJ wrongfully disclosed his personal information to a third party, Kochanski has not pled a valid claim under the PPPA. *Bishop*, 520 F.3d at 520. The Sixth Circuit has consistently found that bare allegations of purported disclosures are insufficient in cases alleging illegal disclosures of private information. *Fisher v. Perron*, 30 F.4th 289 (6th Cir. 2022) (bare allegations of disclosure insufficient in case alleging disclosure of private information); *Long v. Insight Commc'ns of Cent. Ohio, LLC*, 804 F.3d 791, 792 (6th Cir. 2015) (affirming dismissal of a claim under the Stored Communications Act because plaintiffs failed to plead that the defendant knowingly or intentionally divulged plaintiffs' information).

Kochanski's allegations have not and cannot cross the "line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557 (internal citation omitted). His claims must be dismissed with prejudice under Rule 12(b)(6).

## II.    Plaintiff Does Not Have Article III Standing.

Kochanski lacks Article III standing to assert his PPPA claims in federal court. Article III standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

---

[6] *See* ECF 1, Compl. ¶¶ 23, 25 (describing a vast "information marketplace" where "data aggregators purchase, trade, and collect massive databases of information about consumers" from "numerous offline and online sources.").

by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

As to the first element of standing, a plaintiff must show "that he suffered an injury in fact that is concrete, particularized, and actual or imminent."  *TransUnion*, 141 S. Ct. at 2203.  "[A]n injury in law is not an injury in fact.  Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."  *Id.* at 2205 (emphasis in original).  That is, "[u]nder Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'"  *Id.* at 2203 (citation omitted).

ACBJ recognizes that, in *Krassick*, this Court determined that a PPPA plaintiff had Article III standing.  But, as an initial matter, *Krassick* is distinguishable because, here, Kochanski has failed to plausibly allege that he personally suffered a concrete injury as a result of ACBJ's alleged conduct.  In *Krassick*, the defendant did not challenge the sufficiency of the plaintiff's allegations regarding concrete harm.  By contrast, here, as outlined above in Section I, Kochanski fails to allege that his name, let alone his PRI, was disclosed to anyone—much less during the relevant timeframe.  *See, e.g.*, *Burke v. Meredith Corporation*, No. 4:21-cv-00335-RGE-SBJ (S.D. Iowa Nov. 21, 2022), ECF 34, attached as **Exhibit 3** (finding no Article III standing in case involving substantially similar allegations regarding direct marketing practices because plaintiffs' "allegations rel[ied] on a series of unreasonable inferences," that were "not specific enough to demonstrate they suffered a concrete injury").

But even if Kochanski had plausibly alleged that his PRI was disclosed, he still lacks Article III standing to sue for alleged violations of the PPPA.  True, in *Krassick* this Court determined that a PPPA plaintiff had Article III standing, relying on the Sixth Circuit's decision *in Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017).  *See Krassick*, 2022 WL

2071730, at \*2.  But *Coulter-Owens* (like the other cases cited in *Krassick*) did not have the benefit of the Supreme Court's decision in *TransUnion*.  And the reasoning in *Coulter-Owens* does not survive scrutiny under *TransUnion*.

For an injury to be "concrete" under the first prong of the standing analysis, it does not need to be "tangible," but it "must be '*de facto*'; that is, it must actually exist."  *Spokeo*, 578 U.S. at 340.  Plaintiff alleges no tangible injuries here – no financial loss, no physical injury.  At most, then, Plaintiff must be claiming some sort of intangible harm as the result of the alleged PPPA violation.  In *TransUnion*, the Supreme Court "drilled down on what a plaintiff must show to establish that an alleged intangible harm is a concrete injury."  *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1241 (11th Cir. 2022) (*en banc*).  "It reemphasized that, for intangible harms, analogizing to longstanding torts is an important way to determine whether an alleged intangible injury meets the concreteness requirement."  *Id.* (citing *TransUnion*, 141 S. Ct. at  2204–05) (emphasis added).  "[W]ith respect to the concrete-harm requirement in particular. . . courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts."  *TransUnion*, 141 S. Ct. at  2204

In the wake of *TransUnion*, federal courts have repeatedly held that they "must look for a common law analogue to ensure a concrete harm" resulting from a statutory violation.  *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1153 (7th Cir. 2022) (finding concrete harm when the injury alleged was the equivalent of common law defamation and satisfied the elements of a defamation claim).  The reason federal courts "consider traditional torts is because of the harm-to-harm comparison that they engender and elucidate."  *Hunstein*, 48 F.4th at 1244.  This allows federal courts to "consider the comparison as part of the effort to evaluate whether an alleged harm is

real[,]" and "if an element from the common-law comparator tort is completely missing, it is hard to see how a statutory violation could cause a similar harm." *Id.* at 245.

Post-*TransUnion*, federal courts have consistently held that no injury-in-fact exists when there is not a close common-law analogue to the harm allegedly suffered by a plaintiff. *See Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 362 (6th Cir. 2021) (determining plaintiff lacked Article III standing because his alleged privacy harm resulting from a violation of the Fair Debt Collection Practices Act was not analogous to any privacy claim recognized at common law); *Faherty v. Rubin & Rothman*, LLC, No. 3:21-CV-650(AWT), 2022 WL 1025958 (D. Conn. Apr. 6, 2022) (finding plaintiff lacked Article III standing to assert Fair Debt Collection Practices Act claim because her alleged intangible injuries from violation of the statute had no basis in the common law); *Baron v. Syniverse Corp.*, No. 8:21-CV-2349-SCB-SPF, 2022 WL 6162696 (M.D. Fla. Oct. 7, 2022) (finding no Article III standing for plaintiffs who alleged intangible harm from the alleged public disclosure of their private information; because plaintiffs could not establish the "publicity" element of that claim, their alleged injuries were not analogous to a common law tort sufficient to satisfy the concreteness requirement of Article III); *Blaise v. Transworld Sys. Inc.*, No. 21-CV-05791, 2022 WL 3927746, at \*5 (N.D. Ill. Aug. 30, 2022) (finding no Article III standing because there was not an equivalent common law analogue to the injuries allegedly suffered by plaintiffs based on alleged violation of the Fair Debt Collection Practices Act).

In *Krassick*, this Court, in the context of evaluating the PPPA defendant's statute of limitations arguments, determined that a violation of the PPPA "is ***not a traditional common-law tort***[,]" and the rights protected by the PPPA "***did not exist under common law.***" *Krassick*, 2022 WL 2071730 at \*3 (emphasis added).  As this Court explained, "the right to privacy in one's

13

reading materials is [] the creation of a statute [the PPPA]; it did not exist under common law."
*Id.*

Nonetheless, the Court went on to conclude in *Krassick* that the plaintiff did have Article III standing, relying on the unpublished decision in *Coulter-Owens*. *See id.* at *2.  In *Coulter-Owens*, the Sixth Circuit ruled that a PPPA plaintiff had Article III standing on the grounds the alleged statutory violation was not just a "bare *procedural* violation[,]" as defendant contended, but, instead, was "a violation of the PPPA's most basic *substantive protection*, the privacy in one's reading materials." *Id.* (emphasis added).

But after *TransUnion*, courts "need [not] decide whether … statutes are 'substantive' or 'procedural'; *TransUnion* eliminated the significance of such classifications, which had been a preoccupation." *Maddox v. Bank of New York Mellon Tr. Co.*, *N.A.*, 19 F.4th 58, 64 (2d Cir. 2021). Rather, the Supreme Court made clear that the "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *TransUnion,* 141 S. Ct. at 2205.  The Court clarified that although the legislature may "enact legal prohibitions and obligations" and "create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations, "only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."  *Id.* (emphasis in original).  In short, Article III requires there be a concrete harm arising from the statutory violation that is independent of the statutory violation standing alone.

*Coulter-Owens* (understandably, because it predated *TransUnion*), did not "independently decide whether" a plaintiff alleging a violation of the PPPA "has suffered a concrete harm under Article III." *TransUnion,* 141 S. Ct. at 2205.  Again, "[t]hat [concrete harm] inquiry asks whether

plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* at 2213.

That inquiry is "not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal court." *Id.* at 2204.  Instead, given this Court's reasoning in *Krassick* that "an injury to [the plaintiff's] right to privacy in her reading materials is not a traditional common-law tort" 2022 WL 2071730 at *3, this Court should reconsider the question of Article III standing in light of *TransUnion* when evaluating Kochanski's claim.

The Eleventh Circuit's recent *en banc* decision in *Hunstein* is highly persuasive.  In that case, a collection agency hired a commercial mail vendor to notify the plaintiff that he needed to settle his hospital debt.  48 F.4th at 1240.  To do so, the agency disclosed several pieces of information to the vendor, including his name, the amount of the debt, that the nature of the debt— disclosures that are not unlike the business-to-business disclosures that Kochanski exclusively alleges here.  ECF 1, Compl. at ¶¶ 1, 9, 61, 62 (alleging disclosures to data aggregators, data appenders, data cooperatives, direct-mail advertisers).  The plaintiff sued, alleging that the disclosures from the collection agency to a third party—the mail vendor—violated the Fair Debt Collection Practices Act.  *Hunstein*, 48 F.4th at 1240.

In evaluating the plaintiff's Article III standing, the Court of Appeals asked the critical question: "What harm did [the] alleged violation cause?"  48 F.4th at 1245.  And, just like here, the plaintiff's "complaint d[id] not say."  *Id.*  The Eleventh Circuit looked to the closest comparator—"an act similar to the tort of public disclosure."  *Id*.  But "the problem" in *Hunstein* was "evident from the start:  the disclosure alleged here lacks the fundamental element of publicity. And without publicity, there is no invasion of privacy—which means **no harm**, at least not one

that is at all similar to that suffered after a public disclosure." *Id.* (emphasis added).  As the Eleventh Circuit explained, at common law, "only a person 'who gives *publicity* to a matter concerning the private life of another' is liable. Indeed, the harm at the core of the tort is based not on the fact that embarrassing information exists, but that the public knows about it. So without publicity, there can be no public disclosure." *Id.* (quoting Restatement (Second) of Torts § 652D (Am. L. Inst. 1977) (emphasis in original)).

Significantly, "[p]ublicity does not include just '*any* communication by the defendant to a third person.' Instead, it requires that a matter be 'made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Id.* at 1246 (quoting Restatement (Second) of Torts § 652D cmt. a (emphasis in original)).   Because there was no allegation of such publicity in *Hunstein*, the *en banc* Eleventh Circuit held that the plaintiff "cannot show any real harm," and accordingly ordered the dismissal of the complaint. *Id.* at 1240.

That is precisely the situation here.  At most, Kochanski alleges—without specificity or an operative timeframe—disclosures of information to various third parties in a business to business, closed loop transaction.  *See* ECF 1, Compl. at ¶¶ 1, 9, 61, 62.  None of his allegations come close to alleging disclosures to the public at large.  And for the reasons explained in *Hunstein*, those allegations come nowhere close to the "common-law analogue" required under *TransUnion*. Accordingly, in light of *TransUnion*, this Court should hold that Kochanski's allegations under the PPPA do not suffice to plead an injury in fact for purposes of Article III standing.

Thus, for the reasons outlined, Kochanski fails to allege a concrete injury and thus lacks Article III standing.  This Court should dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### III.    Plaintiff's Claims Are Time-Barred.

Kochanski's Complaint must be dismissed because his claims are time-barred.  Dismissal based on the statute of limitations is governed by Rule 12(b)(6).  *See Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975) ("[A] complaint can be dismissed as barred by the applicable statute of limitations under Rule 12(b)(6) when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief.").  Because Kochanski's claims are subject to the three-year statute of limitations in MCL § 600.5805(2) and not the six-year period that he wrongly asserts is applicable here, his Complaint must be dismissed with prejudice.  *See* ECF 1, Compl. at ¶ 1, n.2.

### A.    Plaintiff Fails to Allege When His Claims Accrued.

As an initial matter, Kochanski has failed even to plead that his claims are timely, as this Court can make no reasonable inference as to the date his claims actually accrued based on the threadbare recitals in his Complaint.  *See Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 8(a).  Here, Kochanski pleads only that he was a subscriber to *Hemmings Motor News* "during the relevant pre-July 31, 2016 time period[,]" ECF 1, Compl. at ¶ 9, and then alleges in a conclusory fashion that his PRI was disclosed at some point during "the relevant pre-July 31, 2016 time period[,]" *id.* at ¶ 1.  Kochanski must plead an entitlement to relief within the narrow pre-July 30, 2016 timeframe because that is the exclusive basis for his claims.  *See* Fed. R. Civ. P. 8.  Without alleging when his claim under the PPPA accrued, he cannot attempt to recover statutory damages.  He simply has not adequately pled that his information was disclosed in the relevant timeframe, or at any time.  Therefore, he has not met even the low bar of an "entitlement to relief" under Rule 8 given this pleading deficiency.

**B.**     **The Three-Year Limitations Period Applies to Plaintiff's Claims.**

If this Court were to find Kochanski has Article III standing, that determination necessarily requires that the Court find his PPPA claim is rooted in a tort traditionally recognized at common law, like the invasion of privacy.[7]  Michigan courts consistently apply Michigan's three-year statute of limitations for personal injury actions in M.C.L. § 600.5805(2) to privacy-based torts. *See, e.g., Green v. Lansing Automakers Fed. Credit Union*, No. 342373, 2019 WL 3812108, at *5 (Mich. Ct. App. Aug. 13, 2019) (three-year limitation period applied to invasion of privacy and unlawful intrusion claim); *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 159-60 (Mich. Ct. App. 2004) (three-year limitations period applied to invasion of privacy, false-light claim); *Arent v. Hatch*, 349 N.W.2d 536, 539 (Mich. Ct. App. 1984) (three-year period applied to invasion of privacy claim).

Nevertheless, Kochanski contends that a PPPA claim should be subject to the catch-all six-year limitations period in M.C.L. § 600.5813.  *See* ECF 1, Compl. at ¶ 1 n.1.  Like all other PPPA plaintiffs, Kochanski's position rests on his contention that because the PPPA does not itself contain an express limitations period, the catch-all limitations period must apply.  However, this reasoning is faulty.  Michigan state and federal court courts, including the Sixth Circuit in a recent decision, have applied the three-year limitations in Section 600.5805(2) to statutory claims that, as here, allege injury to persons, *even when* the statute was otherwise silent on a limitations period.

---

[7] Indeed, though this Court has disagreed, other courts have found that the PPPA is a common law analogue to the right to privacy.  *See, e.g., Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017) ("Subscribers' right to privacy in their personal-reading information is grounded in an interest 'traditionally regarded as providing a basis for a lawsuit in English or American courts.'") (citation omitted; emphasis added); *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 641 (E.D. Mich. 2017) ("[T]he right guaranteed by the [PPPA] is similar in kind to other privacy rights that were gradually recognized by American courts over the course of the last century . . .") (emphasis added); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 590 (S.D.N.Y. 2016) (explaining that "the harms contemplated by [the PPPA and its federal analogue] have close ties to those recognized by the common law tort of invasion of privacy") (emphasis added).

*See e.g., Dabish v. McMahon*, 818 F. App'x 423, 427-29 (6th Cir. 2020) (three-year limitations period applies to claims brought under Michigan's Ethnic Intimidation statute, M.C.L. § 750.147b, a personal injury statute with a right not found in common law); *Marks v. Hulstrom*, No. 294453, 2010 WL 2134303, at *1 (Mich. Ct. App. May 27, 2010) (applying Section 600.5805(2)'s limitations period to statutory nuisance claim under M.C.L. § 600.2940(1)); *McCree v. Cont'l Mgmt.*, LLC, No. 351171, 2021 WL 1050115, at *7 (Mich. Ct. App. Mar. 18, 2021) (holding that the three-year limitations period applies to the Housing Act of Michigan and Truth in Renting Act); *Rhule v. Armstrong*, 187 N.W.2d 223, 224 (Mich. 1971) (abrogated on other grounds) (cited by *Citizens for Pretrial Just. v. Goldfarb*, 327 N.W.2d 910, 915 (Mich. 1982)) (applying the three-year personal injury statute of limitations to a statutory wrongful death claim even though the statute itself did not contain an express limitation period).

ACBJ acknowledges that this Court, along with certain judges in the Eastern District of Michigan, have previously found that the catch all six-year limitations period under M.C.L. § 600.5813 applies to PPPA claims.[8]  However, those decisions were reached with the recognition that "no controlling Michigan authority is directly on point," *Pratt*, 586 F. Supp.3d at 673, and "that this area of law is rife with inconsistency, particularly when one attempts to reconcile newer cases with much older ones." *Krassick*, 2022 WL 2071730, *5.

Thus, ACBJ respectfully requests that this Court reexamine its reasoning in *Krassick* and find that the three-year statute of limitations applies to Kochanski's claims, especially considering that Michigan law dictates that the more specific statute of limitations be applied to a statutory claim.  *See e.g., Michigan Emp. Sec. Comm'n v. Westphal*, 542 N.W.2d 360, 362 (Mich. Ct. App.

---

[8] *See Pratt*, 2022 WL 469075; *Hall v. Farm Journal, Inc.*, No. 2:21-cv-11811, ECF 26 (E.D. Mich. April 5, 2022) (Lawson, J.); *Krassick*, 2022 WL 2071730; and *Nashel*, 2022 WL 6775657.

1995) (holding that the application of the more general six-year catch-all statute of limitations when the more specific personal injury statute of limitations is also applicable "would be contrary to both the legislative intent and the judicial rules of construction"); *Frame v. Nehls*, 550 N.W.2d 739, 741, n.3 (Mich. 1996) (when two statutes are potentially applicable, the more specific statute applies).  Moreover, as detailed above, numerous cases have applied the three-year limitations to personal injury statutory claims *even when* the statute was otherwise silent on a limitations period.

Consistent with these precedents, this Court should consider this issue anew, and apply the three-year statute of limitations to Kochanski's claims and dismiss the Complaint with prejudice.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Date:  January 3, 2023                    Respectfully submitted,

                                          /s/ *Kristen C. Rodriguez*
                                          DENTONS US LLP
                                          Kristen C. Rodriguez
                                          Emily A. Golding
                                          233 S. Wacker Drive, Suite 5900
                                          Chicago, IL 60606-6404
                                          Tel: (312) 876-8000
                                          kristen.rodriguez@dentons.com
                                          emily.golding@dentons.com

                                          CLARK HILL PLC
                                          Peter B. Kupelian (P31812)
                                          Carol G. Schley (P51301)
                                          151 South Old Woodward Avenue,
                                          Suite 200
                                          Birmingham, MI 48009
                                          Tel: (248) 530-6336
                                          pkupelian@clarkhill.com
                                          cschley@clarkhill.com

                                          *Counsel for Defendant*,
                                          *American City Business Journals, Inc.*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Local Rule 7.2(b), that this brief complies with type-volume limitations because this Brief contains 6,364 words, excluding the parts of the Brief exempted.  Microsoft Word for Microsoft 365 was used to generate the word for this Brief.

/s/ *Kristen C. Rodriguez*
Kristen C. Rodriguez

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2023, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Kristen C. Rodriguez*
Kristen C. Rodriguez

## <u>INDEX OF EXHIBITS</u>

**Exhibit 1:** Decision, *Wheaton v. Apple Inc.*, No. 3:19-cv-02883, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019).

**Exhibit 2:** Complaint, ECF 1, *Wheaton v. Apple Inc.*, No. 3:19-cv-02883 (N.D. Cal.).

**Exhibit 3:** Decision, ECF 34, *Burke v. Meredith Corporation*, No. 4:21-cv-00335-RGE-SBJ (S.D. Iowa Nov. 21, 2022).